**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MONIQUE SALERNO and KRISTA MENDOZA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    -against-<br><br>KIRK'S NATURAL LLC,<br><br>    Defendant. | Case No.: 1:21-cv-04987-BMC |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION AND PROCEDURAL BACKGROUND ........................................................ 1

BACKGROUND .................................................................................................................... 2

    A.   History of the Litigation and Settlement Negotiations ...................................................... 2

THE TERMS OF THE PROPOSED SETTLEMENT .............................................................. 4

    B.   Certification of the Settlement Class ............................................................................... 4

    C.   Relief for the Members of the Settlement Class .............................................................. 4

    D.   Service Awards and Attorneys' Fees and Expenses ......................................................... 4

    E.   Settlement Notice .......................................................................................................... 5

ARGUMENT .......................................................................................................................... 6

    A.   The Court Should Grant Final Approval of the Settlement Agreement ............................ 6

      1.   Legal Standard ........................................................................................................... 7

      2.   The Settlement Is Procedurally Fair, as It Is the Result of Good Faith, Arm's-Length
          Negotiations by Well-Informed and Highly Experienced Counsel ............................... 8

          i.     Plaintiffs and Their Counsel Have Adequately Represented the Class ................. 9

          ii.    The Settlement was Negotiated at Arm's Length .................................................. 9

      3.   The Settlement Is Substantively Fair, as Application of the Factors Set Out in *City of
          Detroit v. Grinnell Corp.* Demonstrates ...................................................................... 10

          i.     The complexity, expense, and likely duration of litigation ................................. 11

          ii.    The reaction of the class to the settlement ......................................................... 12

          iii.   The stage of the proceedings and the amount of discovery completed ............... 12

          iv.   The risks of establishing liability and damages ................................................. 13

          v.     The risk of maintaining class action status through trial ...................................... 14

          vi.    The ability of Defendant to withstand a greater judgment ................................... 14

          vii.   The range of reasonableness of the settlement in light of the best possible recovery
              and in light of all the attendant risks of litigation ............................................... 15

          viii.  The remaining Rule 23(e)(2)(C) & (D) factors weigh in favor of approval ......... 16

    B.   The Court Should Certify the Settlement Class .............................................................. 17

      1.   The Settlement Class Meets All Prerequisites of Rule 23(a) of the Federal Rules of
          Civil Procedure ........................................................................................................ 17

          i.     Numerosity ......................................................................................................... 17

          ii.    Commonality ...................................................................................................... 17

          iii.   Typicality ........................................................................................................... 18

          iv.   Adequacy of representation ................................................................................. 19

     v.     Ascertainability ................................................................................... 20

  2.   The Settlement Class Meets All Rule 23(b)(3) Requirements ...................................... 20

     i.     Common legal and factual questions predominate in this action ......................... 20

     ii.    A class action is the superior means to adjudicate Plaintiffs' claims .................. 21

CONCLUSION ........................................................................................................................... 23

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)..................................................................................... 17, 20, 21

*Banyai v. Mazur,*
   2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) ............................................... 13

*Bezdek v. Vibram USA, Inc.,*
   809 F.3d 78 (1st Cir. 2015)........................................................................... 14

*Bodon v. Domino's Pizza, LLC,*
   2015 WL 588656 (E.D.N.Y. Jan. 16, 2015) ................................................ 15

*Charron v. Pinnacle Grp. N.Y. LLC,*
   874 F. Supp. 2d 179 (S.D.N.Y. 2012) .......................................................... 14

*Charron v. Wiener,*
   731 F.3d 241 (2d Cir. 2013) ......................................................................... 7, 19

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ........................................................................... 8

*Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ......................................................................... 2, 10

*Dupler v. Costco Wholesale Corp.,*
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) .......................................................... 11

*Gen. Tel. Co. of Sw. v. Falcon,*
   457 U.S. 147 (1982)....................................................................................... 14

*Hadel v. Gaucho, LLC,*
   2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) ............................................. 8

*Hall v. ProSource Techs., LLC,*
   2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) .............................................. 8

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ...................................................................... 22

*In re Med. X-Ray Film Antitrust Litig.,*
   1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)................................................... 14

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*,
    241 F.R.D. 185 (S.D.N.Y. 2007) ........................................................ 19

*In re Nassau Cty. Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006) ............................................................. 21

*In re Nissan Radiator/Transmission Cooler Litig.*,
    2013 WL 4080946 (S.D.N.Y. May 30, 2013) ...................................... 18

*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F.App'x 760 (2d Cir. 2020) ......................................................... 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013) ................................................ 12

*In re Petrobras Sec. Litig.*,
    862 F.3d 250 (2d Cir. 2017) ............................................................. 20

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*,
    2022 WL 3043103 (E.D.N.Y. Aug. 2, 2022) ............................ 7, 8, 10, 11

*In re Sinus Buster Products Consumer Litig.*,
    2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) .................................. 11, 14

*Manley Midan Rest. Inc.*,
    2016 WL 1274577 (S.D.N.Y. Mar., 2016) ...................................... 11, 12

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2nd Cir. 2018) ........................................................... 18

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ........................................................ 17, 19

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) ..................................................... 7, 8, 10

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ......................................... 11, 12, 21

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ..................................... 16

*Price v. L'Oreal USA, Inc.*,
    No. 17 Civ. 614 (LGS), 2018 WL 3869896 (S.D.N.Y. Aug. 15, 2018) .................. 20

*Puddu v. 6D Glob. Techs, Inc.*,
    2021 WL 1910656 (S.D.N.Y. May 12, 2021) .................................... 8, 9

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ......................................................... 18, 19

*Rodriguez v. It's Just Lunch International*,
  2020 WL 1030983 (S.D.N.Y. March 2, 2020) ...................................... 12

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ............................................................ 18

*Tart v. Lions Gate Enter. Corp.*,
  2015 WL 5945846 (Oct. 13, 2015) ............................................... 21, 22

*Tiro v. Pub. House Investments, LLC*,
  2013 WL 2254551 (S.D.N.Y. May 22, 2013) ....................................... 9

*Viafara v. MCIZ Corp.*,
  2014 WL 1777438 (S.D.N.Y. May 1, 2014) ........................................ 14

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ................................................................ 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..................................................... 8, 10, 15

*Willix v. Healthfirst, Inc.*,
  2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ...................................... 13

*Zeltser v. Merrill Lynch & Co.*,
  2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ................................. 13, 22

## Rules

Federal Rule of Civil Procedure 23 ................................................ passim
Federal Rule of Civil Procedure 23(a) ............................................. passim
Federal Rule of Civil Procedure 23(b) ............................................ 20, 21
Federal Rule of Civil Procedure 23(e) ............................................. passim

On August 18, 2022, this Court granted the motion of Plaintiffs[1] Monique Salerno ("Salerno") and Krista Mendoza ("Mendoza") (collectively "Plaintiffs"), for preliminary approval of the Settlement Agreement and certification of the Settlement Class. *See* ECF No. 35 ("Preliminary Approval Order"). Plaintiffs now move this Court for final approval of the settlement and for certification of the Settlement Class.

## INTRODUCTION AND PROCEDURAL BACKGROUND

The Settlement is an excellent result for the Settlement Class and should now receive final approval so that class members can be paid. The Settlement would finally resolve the claims of consumers who purchased certain Products[2] of Defendant Kirk's Naturals LLC d/b/a South of France ("Defendant," "South of France", or the "Company") sold under its South of France label between September 3, 2015 to August 12, 2022. Plaintiffs allege that the name of the products themselves—South of France—a region in France; (b) French translation of all text on the label; and (c) an image of the southern French coastline in the background of the label, with notations of iconic cities such as Marseille, Cannes, and Nice ("French Representations"), mislead consumers into believing the Products were from France when, in fact, they were from the United States.

The Settlement Agreement provides excellent relief to Settlement Class Members, providing a refund of $2.00 for each Product purchased, up to a maximum of forty (40) Products for which a Proof of Purchase is submitted and up to a maximum of ten (10) Products for Settlement Class Members without Proof of Purchase, for a total value of six-hundred fifty thousand dollars ($650,000).

---

[1] Unless otherwise indicated, capitalized terms shall have the meaning that the Settlement Agreement ascribes to them. *See* ECF No. 33 ("Settlement" or "Settlement Agreement"). References to "§ __" are to sections in the Settlement Agreement.

[2] A list of the Products at issue is set forth in Exhibit A to the Settlement. ECF No. 33-1.

As described in the Declaration of Steven Weisbrot Re: Notice Procedures filed concurrently with this Motion for Final Approval ("Weisbrot Notice Decl."), the Settlement Administrator implemented a wide-ranging notice program. *See* Weisbrot Notice Decl. at ¶¶ 5-11.) The media Notice Program was designed to reach 70.11% of the potential Settlement Class with an average frequency of 3.27 times each and an estimated 29.85 million impressions. (Weisbrot Notice Decl. at ¶ 12.) The program exceeded those expectations with an approximate reach of 75.5%, average frequency of 3.5 times each, and approximately 34.4 million impressions. (*Id.* at ¶ 13.) The response from the Settlement Class has been overwhelmingly positive:  despite receiving notice as of September 15, 2022, to date, no class members have opted-out or objected. (Weisbrot Notice Decl. at ¶¶ 19-20.) In stark contrast, more than two-hundred sixty-five thousand (265,000) claims have been filed. (Weisbrot Notice Decl. at ¶ 18.)

This class action readily satisfies the requirements of Federal Rule of Civil Procedure 23, supporting certification of the Settlement Class. Given this, and the standards set forth by the Second Circuit for the procedural and substantive fairness of the Settlement, including in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"), as well as the factors enumerated by Federal Rule of Civil Procedure 23(e)(2), the Settlement should be finally approved.

## **BACKGROUND**

### A.    **History of the Litigation and Settlement Negotiations**

On September 3, 2021, Plaintiff Monique Salerno, filed the present lawsuit against Defendant for the mislabeling French Representations. (ECF No. 1.) On November 30, 2021, Defendant filed its Answer. (ECF No. 19.) The parties then entered several months of formal written discovery. On February 22, 2022, Plaintiff Krista Mendoza sent Defendant a pre-suit notice letter—pursuant to the California Legal Remedies Act—as well as a draft complaint setting forth similar claims of deception for the French Representations. *See* Declaration of Charles Moore in

Support of Plaintiffs' Unopposed Motion for Final Approval ("Moore Final Approval Decl.."), ¶ 10.

On May 17, 2022, the Parties conducted a full day mediation with the Hon. Wayne Andersen (Ret.). At the conclusion of the mediation, the Parties agreed to the material terms for the Class. *Id.* ¶ 12. Only after agreement on these material terms for the Class, did the Parties negotiate attorney fees and costs. *Id.* ¶ 13.

Plaintiffs' objective in filing the Action was to compensate Settlement Class Members damaged by the alleged misrepresentations. *Id.* ¶ 14. Through the Actions and the Settlement Agreement, Plaintiffs achieved substantial relief for the Settlement Class. The Settlement allows eligible Settlement Class Members to make up to six-hundred fifty thousand dollars ($650,000) in claims. Each Settlement Class Member can receive $2 per product for up to ten (10) products without proof of purchase, and up to forty (40) products with proof of purchase. Thus, the Settlement is an outstanding result for Plaintiffs and the members of the Settlement Class.

The Parties only reached the Settlement after conducting discovery and engaging in extensive arm's-length, good-faith negotiations, including a mediation session with an esteemed mediator, the Honorable Wayne R. Andersen (Ret.).[3] While providing significant benefits for the Settlement Class Members, the Settlement also takes into account the substantial risks the Parties would face if the Action progressed.[4]

---

[3] (Moore Final Approval Decl. ¶ 12.)

[4] (*Id.* at ¶¶ 16, 18.)

## THE TERMS OF THE PROPOSED SETTLEMENT

The Settlement Agreement defines the Settlement Class, describes the Parties' agreed-upon Settlement relief, and proposes a plan for disseminating notice to the Settlement Class Members.

**B.     Certification of the Settlement Class**

Under the Settlement Agreement, the Parties agree to seek certification of a nationwide Settlement Class defined as follows:

> All consumers in the United States who purchased the Products during the Class Period of September 3, 2015 to August 12, 2022.
>
> Excluded from this definition are the Released Parties, any government entities, persons who made such purchase for the purpose of resale, persons who made a valid, timely request for exclusion, and the Hon. Brian M. Cogan and Hon. Wayne R. Andersen (Ret.), and any members of their immediate family.

**C.     Relief for the Members of the Settlement Class**

The Settlement Agreement provides for significant substantial monetary relief. Defendant will provide refunds in the amount up to $650,000 to pay timely, valid, and approved Claims. Defendant will also separately pay all costs of notice and claims administration; judicially approved Service Awards; and, judicially approved Attorneys' Fees and Expenses. (§§ 3.6, 3.13, 4.7, 5.1-5.2.)

**D.     Service Awards and Attorneys' Fees and Expenses**

Defendant has agreed not to oppose an application for payment of Service Awards of up to $3,000 to each of the named Plaintiffs (for a total of $6,000) to compensate them for the actions and risk they took in their capacities as class representatives.  (§ 5.2). Defendant has also agreed not to oppose an application for payment of $385,000 for attorneys' fees and costs to Class Counsel for Class Counsel's work and expenses on the Actions. (§ 5.1).

E.     **Settlement Notice**

The Court appointed Angeion Group ("Angeion") to administer the notice process. Preliminary Approval Order at 6 (ECF No. 35). In terms of the methods of notice, the Parties developed a robust notice program with the assistance of Angeion that included: (1) comprehensive digital media based notice; (2) a dedicated Settlement Website through which Settlement Class members can obtain more detailed information about the Settlement and access case documents; and (3) a toll-free telephone helpline through which Settlement Class members can obtain additional information about the Settlement and request the class notice and/or a Claim Form. (Weisbrot Notice Decl. at ¶¶ 5-17). Pursuant to the notice plan, 34.4 million digital impressions were disseminated. (Weisbrot Notice Decl. at ¶13.) The media portions of the Notice Program delivered an approximate 75.5% reach with an average frequency of 3.5 times each. (Weisbrot Notice Decl. at ¶ 13.)

Under the Settlement Agreement, the Settlement Website posted Settlement-related and case-related documents such as the Long Form Notice in both downloadable PDF format; answers to frequently asked questions; a Contact Information page that includes the address, telephone, and email for the Claim Administrator; the Settlement Agreement; the signed order of Preliminary Approval; the Second Amended Class Action Complaint; the Approved Product List; a downloadable and online version of the Claim Form; and (when they become available) the motion for final approval and Plaintiffs' application(s) for Attorneys' Fees, Costs and an Incentive Award. The Settlement Website also included procedural information regarding the status of the Court approval process, such as announcements of the Final Approval Hearing date. (Weisbrot Notice Decl. ¶ 14.) To allow for the maximum convenience of the Settlement Class Members, claims may be submitted online. *Id.*

As part of the Settlement, Defendant agreed to pay for the cost of notice. The Notice Program discussed above and in detail in the Weisbrot Notice Declaration, is the best notice that is practicable under the circumstances and fully comports with due process and Fed. R. Civ. P. 23. The Notice Program includes a robust media campaign consisting of state-of-the-art internet advertising, a comprehensive social media campaign and a paid search campaign. The Notice Program also provides for the implementation of a dedicated settlement website and toll-free telephone line where Settlement Class Members can learn more about their rights and options pursuant to the terms of the Settlement.

## **ARGUMENT**

### A.    **The Court Should Grant Final Approval of the Settlement Agreement**

Class Counsel have worked steadfastly to reach a fair, reasonable, and adequate Settlement. (*See generally* Moore Final Approval Decl.). Plaintiffs and their counsel believe the claims the Settlement resolves are strong and have merit. (*Id.* at ¶ 15.) They recognize, however, that significant expense and risk are associated with continuing to prosecute the claims through trial and any appeals. (*Id.*) In negotiating and evaluating the Settlement, Plaintiffs and Class Counsel have taken these costs and uncertainties into account, as well as the delays inherent in complex class action litigation. (*Id.* at ¶ 18.) Additionally, in the process of investigating and litigating the Actions, Class Counsel conducted significant research on the consumer protection statutes at issue, as well as the overall legal landscape, to determine the likelihood of success and reasonable parameters under which courts have approved settlements in comparable cases. (*Id.* at ¶ 15.). For the foregoing reasons, Class Counsel believe this Settlement provides significant relief to the Settlement Class Members and is fair, reasonable, adequate, and in the best interests of the Settlement Class. (*Id.* at ¶ 18.)

1.      **Legal Standard**

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the settlement agreement] is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). The "fair, reasonable, and adequate" standard effectively requires parties to show that a settlement agreement is both procedurally and substantively fair. *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *accord McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009).

"In 2018, Rule 23 was amended to list specific factors relating to the court's approval of the class settlement." *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, 2022 WL 3043103, at *4 (E.D.N.Y. Aug. 2, 2022). "Rule 23(e)(2) now provides that, in determining whether a settlement is 'fair, reasonable, and adequate,' the Court must consider whether:"[5]

(A) The class representatives and class counsel have adequately represented the class;

(B) The proposal was negotiated at arm's length;

(C) The relief provided for the class is adequate, taking into account:

   **(i)**    the costs, risks, and delay of trial and appeal;

   **(ii)**   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   **(iii)**  the terms of any proposed award of attorney's fees, including timing of payment; and

   **(iv)**   any agreement required to be identified under Rule 23(e)(3);

(D) The proposal treats Class Members equitably relative to each other.

Fed. R. Civ. P. 23(e).

---

[5] *Id.*

The Second U.S. Circuit Court of Appeals has recognized a "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds*, 588 F.3d at 803 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*")). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Visa*, 396 F.3d at 117 (citation omitted); *see also Hadel v. Gaucho, LLC*, 2016 WL 1060324, at *2 (S.D.N.Y. Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows Class Members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116.

Here, the Settlement Agreement is both procedurally and substantively fair and falls well within the range of possible approval.

### 2. The Settlement Is Procedurally Fair, as It Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Highly Experienced Counsel

The first two factors under Rule 23(e)(2) concern the procedural fairness of the settlement, that is "the conduct of the litigation and of the negotiations leading up to the proposed settlement[.]" *In re Restasis*, 2022 WL 3043103, at *5. To demonstrate a settlement's procedural fairness, a party must show "that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *see also Hall v. ProSource Techs., LLC*, 2016 WL 1555128, at *5 (E.D.N.Y. Apr. 11, 2016); *Puddu v. 6D Glob. Techs, Inc.*, 2021 WL 1910656, at *4 (S.D.N.Y. May 12, 2021)("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel").

8

i. **Plaintiffs and Their Counsel Have Adequately Represented the Class**

Plaintiffs and their Counsel have more than adequately represented the interest of the Settlement Class in this case. Plaintiffs were involved in litigating these Actions, including by reviewing the complaints and other case documents, communicating with Plaintiffs' Counsel regarding the status of the cases and participating in the settlement of the action, and responding to discovery requests from Defendant. Plaintiffs fulfilled their responsibility of advancing and protecting the interests of the Settlement Class and evaluating the proposed Settlement to determine that it is in the best interests of the Settlement Class.

Plaintiffs' Counsel also more than adequately represented the Settlement Class. As detailed above, Plaintiffs' Counsel performed an extensive investigation into the claims at issue; participated in a full day mediation session; and conducted extensive discovery into the bases of the potential Settlement. Class Counsel have relied on their significant experience in litigating and resolving class actions, including consumer class actions relating to misleading products, in order to reach a Settlement that Class Counsel believes is an excellent result for the Settlement Class. (*See generally* Moore Final Approval Decl.)

ii. **The Settlement was Negotiated at Arm's Length**

Participation of a highly qualified mediator in settlement negotiations strongly supports a finding that negotiations were conducted at arm's length and without collusion. *See Tiro v. Pub. House Investments, LLC*, 2013 WL 2254551, at *2 (S.D.N.Y. May 22, 2013) ("The assistance of an experienced JAMS employment mediator . . . reinforces that the Settlement Agreement is non-collusive."); *Puddu*, 2021 WL 1910656, at *4 (there is "a presumption of fairness when a settlement is reached with the assistance of a mediator").

Plaintiffs and their counsel conducted a thorough investigation of the claims and defenses prior to filing the Action and continued to analyze the claims throughout the pendency of the case. (*See, e.g.*, Moore Final Approval Decl. ¶¶ 6-11, 15.) Prior to agreeing to the Settlement, Class Counsel conducted extensive discovery. (*Id.*) Through this investigation, discovery, and ongoing analysis, Class Counsel came to understand the strengths and weaknesses of the Action. (*Id.*)

Class Counsel have substantial experience litigating class actions and negotiating class settlements. (*See* ECF No. 34-3, (Reese LLP's firm résumé; Moore Decl. ¶ 3.) Moreover, the Parties participated in serious and informed arms-length negotiations before a highly qualified mediator Honorable Wayne Andersen (Ret.), which led to an agreement in principle to settle the case and, ultimately, the finalized Settlement Agreement. (Moore Final Approval Decl. ¶¶ 4, 12.)

For the foregoing reasons, the Settlement Agreement is procedurally fair.

### 3. The Settlement Is Substantively Fair, as Application of the Factors Set Out in *City of Detroit v. Grinnell Corp.* Demonstrates

Factors (C)-(D) of Rule 23(e) "are 'substantive,' addressing 'the terms of the proposed settlement." *In re Restasis*, 2022 WL 3043103, at *5. In this Circuit, to demonstrate the substantive fairness of a settlement agreement, a party must show that the factors the Second Circuit set forth in

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"), weigh in favor of approving the agreement. The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

10

*McReynolds*, 588 F.3d at 804 (quoting *Grinnell*, 495 F.2d at 463).

Critically, "[t]he goal of the [2018] amendment was 'not to displace any factors [developed in any circuit], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision.'" *In re Restasis*, 2022 WL 3043103, at *5 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). "District courts in this Circuit, accordingly, have considered the *Grinnell* factors 'in tandem' with the factors set forth in Rule 23(e)(2), [citation omitted] and the Second Circuit has continued to endorse the use of the *Grinnell* factors following the 2018 amendment. *Id.* (citing *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F.App'x 760, 762-63 (2d Cir. 2020)).

Here, both the Rule 23(e)(2) factors and *Grinnell* factors overwhelmingly favor final approval of the Settlement Agreement.

### i.     The complexity, expense, and likely duration of litigation

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) (citations omitted). Consumer class action lawsuits, like the Actions here, are complex, expensive, and lengthy. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); *see also Manley*, 2016 WL 1274577, at *9 ("Most class actions are inherently complex[.]"). Should the Court decline to approve the Settlement Agreement, further litigation would resume. Such litigation could include contested class certification (and possibly decertification) proceedings and appeals, including competing expert testimony and contested *Daubert* motions; further costly nationwide discovery, including multiple depositions, and yet more voluminous document production; costly merits and class expert reports and discovery; and trial. (Moore Final Approval Decl. ¶ 16.) Each step towards trial would be subject to Defendant's vigorous opposition and appeal. (*Id.*) Even if the case were to proceed to judgment on the merits,

any final judgment would likely be appealed, which would take significant time and resources. (*Id.*) These litigation efforts would be costly to all and require significant judicial oversight. (*Id.*)

In short, "litigation of this matter . . . through trial would be complex, costly and long." *Manley*, 2016 WL 1274577, at \*9 (citation omitted). "The settlement eliminates [the] costs and risks" associated with further litigation. *Meredith Corp.*, 87 F. Supp. 3d at 663. "It also obtains for the class prompt [] compensation for prior [] injuries." *Id.*

For all of these reasons, this factor weighs strongly in favor of final approval.

### ii.      The reaction of the class to the settlement

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Rodriguez v. It's Just Lunch International*, 2020 WL 1030983, \*4 (S.D.N.Y. March 2, 2020) (citing *Grinnell*). Here, the Settlement Class Members have until January 6, 2023 to object to or opt-out of the Settlement. As of December 5, 2022, no one has opted-out nor objected.  (*See* Weisbrot Notice Decl., ¶ 19.) At the same time, and in stark contrast, more than 265,391 claims have been submitted. (Weisbrot Notice Decl. at ¶ 18.) This suggests nearly universal support for the Settlement and constitutes strong circumstantial evidence supporting its fairness.

### iii.      The stage of the proceedings and the amount of discovery completed

The third *Grinnell* factor—the stage of the proceedings and the amount of discovery completed—considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted).

Here, "discovery has advanced sufficiently to allow the parties to resolve the case responsibly." *Manley*, 2016 WL 1274577, at *9. Class Counsel have conducted discovery related to claims, including interrogatories, requests for admission, and review of production of approximately 375,000 pages of Defendant's documents. *See* (Moore Final Approval Decl. ¶ 11, 15), *see also Zeltser v. Merrill Lynch & Co.*, 2014 WL 4816134, at *6 (S.D.N.Y. Sept. 23, 2014) ("Here, through both formal discovery and an informal exchange of information prior to mediation, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue."). Consequently, Plaintiffs had sufficient information to evaluate the terms of the proposed Settlement.

### iv.     The risks of establishing liability and damages

"Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011). "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007).

Plaintiffs recognize that, as with any litigation, the Actions involve uncertainties as to their outcome. (Moore Final Approval Decl. ¶ 15.) Defendant continues to deny all of Plaintiffs' allegations, and should this matter proceed, it will vigorously defend itself on the merits. (*Id.* at ¶ 16.) Defendant would likely appeal, if possible, decisions in Plaintiffs' favor. (*Id.*) Defendant would challenge Plaintiffs at every litigation step, presenting significant risks of ending the litigation while increasing costs to Plaintiffs and the Settlement Class Members. (*Id.*) Further litigation presents no guarantee for recovery, let alone a recovery greater than the recovery for which the Settlement provides. (*Id.*)

For these reasons, the risks of establishing liability and damages strongly support final approval under both *Grinnell* and Rule 23(e)(2)(C)(i).

### v.       The risk of maintaining class action status through trial

The Actions settled before rulings on class certification, and the current certification is for settlement purposes only. (Preliminary Approval Order, §§ 3). Defendant has stated that but for the Settlement, it would vigorously oppose class certification. (Moore Final Approval Decl. ¶ 16.) *See In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998) (possibility that defendant would challenge maintenance of class in absence of settlement was risk to class and potential recovery). Furthermore, even if the Court were to certify a litigation class, the certification would not be set in stone. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). Given the risks, this factor weighs in favor of final approval, under both *Grinnell* and Rule 23(e)(2)(C)(i).

### vi.       The ability of Defendant to withstand a greater judgment

It is more important that the Settlement Class receive some relief than possibly "yet more" relief. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012); *see also Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 83 (1st Cir. 2015) ("The fact that a better deal for Class Members is imaginable does not mean that such a deal would have been attainable in these negotiations, or that the deal that was actually obtained is not within the range of reasonable outcomes."). Further, "[c]ourts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Products Consumer Litig.*, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) (citations omitted). A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014) (citation omitted). For these reasons, this factor is neutral.

vii.     **The range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation**

"There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Visa*, 396 F.3d at 119 (citation omitted). "In other words, the question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]" *Bodon v. Domino's Pizza, LLC*, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015) (citation omitted).

Here, the relief for which the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and in light of all the attendant risks of litigation. (*See* Moore Final Approval Decl. ¶ 17.) The gravamen of the Actions is that Defendant is deceiving consumers by misrepresenting the source of its Products. (*Id.*) Furthermore, the cash compensation to which eligible Settlement Class Members will be entitled goes a significant way toward compensating Settlement Class Members for the damages they incurred on account of Defendant's allegedly deceptive representations about the Products. (*Id.*) Defendant charges a premium over its competitors of approximately $2.48 per product.  (*Id.*) The Settlement Agreement provides that Settlement Class Members shall receive a cash payment of $2.00 for each Product purchased. (*Id.*) Thus they receive near full compensation for their injury. (*Id.*)

As discussed above, while Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks. (Moore Final Approval Decl. ¶ 18.) While continuation of the litigation might not result in an increased benefit to the Settlement Class, it would lead to substantial expenditure by both Parties. (*Id.*) Taking into account the risks and benefits Plaintiffs have outlined above, the Settlement falls within the "range of reasonableness." Class Counsel have

achieved the best possible recovery considering the merits of the Settlement weighed against the cost and risks of further litigation. (*Id.*)

*       *       *       *       *

Thus, collectively and independently, the *Grinnell* factors warrant the conclusion that the Settlement Agreement is fair, adequate, and reasonable. As such, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

        **viii.**        **The remaining Rule 23(e)(2)(C) & (D) factors weigh in favor of approval**

As discussed in detail in the Weisbrot Declaration, the notice plan provided a 75.5% reach and 3.5 frequency, which meets the standards set by the Federal Judicial Center. (*See* Weisbrot Declaration, ¶ 13.) Equally Class Members can submit claims via the settlement website or request a claim form via the website or toll-free hotline. (*Id.* ¶ 14.) As such, Rule 23(e)(2)(C)(ii) factor weighs in favor of the settlement.

The total value of the settlement represents $1,260,000 in total relief to the class.[6] Class Counsel seek payment of $24,104.75 in unreimbursed costs and $360,895.25 for attorney fees (for a total of $385,000). The present fee request of $360,895.25 represents 28.6% of the $1,260,000 amount and is well within the range awarded in this Circuit. *See e.g. Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."). Thus the Rule 23(e)(2)(C)(iii) factor weighs in favor of the settlement.

There are no other agreements amongst the parties, and thus the Rule 23(e)(2)(C)(iv) factor weighs in favor of the settlement.

---

[6] $650,000 for claims; $219,000 in notice and administration; $385,000 in attorney fees and costs; and $6,000 in service award = $1,260,000.

Finally, all Class Members are eligible to receive the same relief, that is, $2 per product for up to 10 products without proof of purchase, and 40 products with proof of purchase. All Class Members are treated equally, and thus, the Rule 23(e)(2)(D) factor weighs in favor of settlement.

**B.     The Court Should Certify the Settlement Class**

A court may certify a settlement class upon finding that the action underlying the settlement satisfies all Rule 23(a) prerequisites and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 619–22 (1997). As Plaintiffs set forth below, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3), and, consequently, Plaintiffs respectfully ask the Court to certify the Settlement Class for settlement purposes.

**1.     The Settlement Class Meets All Prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure**

Rule 23(a) has four prerequisites for certification of a class: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation. FED. R. CIV. P. 23(a). The Settlement Class meets each prerequisite and, as a result, satisfies Rule 23(a).

**i.     Numerosity**

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." FED. R. CIV. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Here, there is no dispute that thousands of people nationwide purchased the Products after during the Class Period. Indeed, to date more than 265,000 claims have been submitted. (Weisbrot Decl. at ¶ 18.) Numerosity is easily satisfied. (*Id.*)

**ii.     Commonality**

Under Rule 23(a)(2), plaintiffs must show that "questions of law or fact common to the

[proposed] class" exist. FED. R. CIV. P. 23(a)(2). Commonality requires that the proposed Class Members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable of classwide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do[.]" *Id.* (citation, quotation marks, and brackets omitted). The Second Circuit has construed this instruction liberally, holding that plaintiffs need only show that their injuries "derive[d] from defendants' . . . unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).

Here, there are common questions of law and fact that will generate common answers apt to drive the resolution of the litigation, including but not limited to whether Defendant deceived consumers about the country of origin of the Products.  Resolution of this common question requires evaluation of the merits under an objective standard, *i.e.*, the "reasonable consumer" test. *Mantikas v. Kellogg Co.*, 910 F.3d 633, 363 (2nd Cir. 2018) ("To state a claim for false advertising or deceptive practices under New York or California law, a plaintiff must plausibly allege that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances"). Thus, commonality is satisfied.

### iii.      Typicality

Under Rule 23(a)(3), plaintiffs must show that the proposed class representatives' claims "are typical of the [class'] claims." FED. R. CIV. P. 23(a)(3). Plaintiffs must show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993) (citations omitted). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler*

*Litig.*, , 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013).

Here, typicality is met because the same unlawful conduct by Defendant—*i.e.*, its allegedly misleading marketing of the country of origin of the Products - was directed at, or affected, both Plaintiffs and the members of the proposed Settlement Class. *Robidoux*, 987 F.2d at 936–37.

### iv.     Adequacy of representation

Under Rule 23(a)(4), plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other Class Members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378.

To satisfy the first requirement, Plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between a class' representative(s) and its members. *Charron*, 731 F.3d at 249. Here, Plaintiffs possess the same interests as the proposed Settlement Class Members because Plaintiffs and the Settlement Class Members were all allegedly injured in the same manner based on their purchase of the Products.

With respect to the second requirement, Class Counsel are qualified, experienced, and able to conduct the litigation. Class Counsel are not representing clients with interests at odds with the interests of the Settlement Class Members and are not acting as class representatives. (Moore Final Approval Decl. ¶ 27.) Further, they have invested considerable time and resources into the prosecution of the Action. (*Id.*) They have qualified as lead counsel in other class actions and have a proven track record of successful prosecution of significant class actions. (Moore Final Approval Decl. ¶ 1; Ex. 1.)  "In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 241 F.R.D. 185, 199 n.99

(S.D.N.Y. 2007) (citation omitted).

For the foregoing reasons, Plaintiffs have satisfied the adequacy prerequisite.

### v.      Ascertainability

The Second Circuit has recognized an implied requirement of ascertainability in Rule 23. "'[A] class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries.'" *Price v. L'Oreal USA, Inc.*, No. 17 Civ. 614 (LGS), 2018 WL 3869896, *4 (S.D.N.Y. Aug. 15, 2018) (quoting *In re Petrobras Sec. Litig.*, 862 F.3d 250, 257 (2d Cir. 2017)). Satisfying the ascertainability requirement "does not 'require a showing of administrative feasibility at the class certification stage.'" *Id.* As in *Price*, here the Settlement Class is ascertainable because it "can be determined with reference to one objective criterion with definite boundaries: whether an individual purchased a Product during the class period." *Id.* Here, that standard is met by the class definition.

### 2.      The Settlement Class Meets All Rule 23(b)(3) Requirements

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc.*, 521 U.S. at 614. Plaintiffs seek certification under Rule 23(b)(3). Under that rule, the court must find that "questions of law or fact common to Class Members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### i.      Common legal and factual questions predominate in this action

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623 (citation omitted). The Second Circuit has held that "to meet the predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and

20

thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (citation omitted). In the context of a request for settlement-only class certification, concerns about whether individual issues "would present intractable management problems" at trial drop out because "the proposal is that there be no trial." *Id.* at 620 (citation omitted). As a result, "the predominance inquiry will sometimes be easier to satisfy in the settlement context." *Tart v. Lions Gate Enter. Corp.*, 2015 WL 5945846, at *4 (Oct. 13, 2015)(citation omitted). Furthermore, consumer fraud cases readily satisfy the predominance inquiry. *Amchem Prods., Inc.*, 521 U.S. at 625.

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether Defendant's French Representations on the Products were misleading and likely to deceive reasonable consumers regarding the country of origin of the Products. These issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28 (citation omitted). The Settlement Class meets the predominance requirement for settlement purposes.

### ii. A class action is the superior means to adjudicate Plaintiffs' claims

Rule 23(b)(3) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Here, the class action mechanism is superior to individual actions for numerous reasons. First, "[t]he potential Class Members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp.*, 87 F. Supp. 3d at 661 (citation omitted).

Additionally, a class action is superior here because "it will conserve judicial resources" and "is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." *Zeltser*, 2014 WL 4816134, at *3 (citation omitted). As a result of the false and misleading labeling, the Products are sold at a premium price. The cost to purchase any of the Products is less than $10, thus, the potential recovery for any individual Settlement Class Member is relatively small.  As a result, the expense and burden of litigation make it virtually impossible for the Settlement Class Members to seek redress on an individual basis. By contrast, in a class action, the cost of litigation is spread across the entire class, thereby making litigation viable. *See, e.g.*, *Tart*, 2015 WL 5945846, at *5. "Employing the class device here will not only achieve economies of scale for Class Members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications." *Zeltser*, 2014 WL 4816134, at *3 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998); other citations omitted). For all of the foregoing reasons, a class action is superior to individual suits.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, the Court should finally certify the Settlement Class.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed Final Approval Order certifying the proposed Settlement Class and granting final approval of the proposed Settlement.

Date: December 15, 2022

Respectfully submitted,

By: ___/s/ Charles D. Moore___
Charles D. Moore
**REESE LLP**
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55412
Telephone: (212) 643-0500
*cmoore@reesellp.com*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York  10025
Telephone: (212) 643-0500
*mreese@reesellp.com*

*Counsel for Plaintiffs and the Proposed Class*